UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| DARIS A. POTTER | ) | |
| | ) | |
| V. | ) | NO. 2:13-CV-310 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 11], while the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 13].

This is an action for judicial review of the final decision of the Commissioner which denied the plaintiff's application for disability and disability insurance under the Social Security Act following a hearing before an Administrative Law Judge ["ALJ"].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve

conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 52 years of age, a person approaching advanced age, on her alleged disability onset date of July 13, 2011. She has a high school education and cannot return to her past relevant work. The medical evidence is summarized in the defendant's brief as follows:

> Medical records from John Whitlock, M.D., of Watauga Internal Medicine show that chest x-rays were performed in July 2010, which showed no radiographic evidence of acute cardiac or pulmonary abnormality (Tr. 173-174). In August 2010, Plaintiff complained of joint and back pain. X-rays of the left chest and ribs in September 2010 revealed osteopenia, but no fractures or acute disease (Tr. 189-195). She continued to complain of joint pain in November 2010 (Tr. 175, 196-199). Plaintiff was sent for a bone mineral density study that demonstrated she was osteoporotic and had a high fracture risk (Tr. 175). In January 2011, Plaintiff complained of nasal congestion (Tr. 200). Her height was recorded at 66 inches and she weighed 233 pounds (Tr. 200). Plaintiff continued to have musculoskeletal complaints (Tr. 200). She continued to smoke (Tr. 200). Her past medical history included back pain, gastroesophageal reflux disease, and hypertension (Tr. 200). Dr. Whitlock recommended smoking cessation and encouraged her to lose weight for better health (Tr. 203). Plaintiff saw Dr. Whitlock again in February 2011 (Tr. 204-206). In April 2011, Plaintiff reported having great pain with her fibromyalgia and musculoskeletal issues (Tr. 207). She stated her breathing was worse, yet she continued to smoke and made no real effort to cut back (Tr. 207). On physical exam, her lungs had scattered crackles bilaterally (Tr. 209). Musculoskeletal exam showed multiple tender points in typical presentation for fibromyalgia (Tr. 209). She had a depressed affect (Tr. 210). Dr. Whitlock discussed the importance of regular exercise

and recommended she start a regular exercise program, lose weight, and stop smoking (Tr. 210).

Objective imaging of the lumbar spine was performed on May 19, 2011, at High Country Imaging due to low back pain (Tr. 224). Findings revealed bone structures were negative for acute fracture or slippage and the intervertebral spaces were preserved (Tr. 224).

When Plaintiff saw Dr. Whitlock on June 8, 2011, she admitted to having her worst allergy season, yet she continued to smoke a pack of cigarettes a day (Tr. 211-214). She returned on June 29, 2011, to discuss work papers (Tr. 270). Dr. Whitlock stated that because of recent injuries, Plaintiff should apply for disability benefits (Tr. 270-271). He told her that because of her fibromyalgia and chronic pain, she was not able to do her job, but he also told her this did not qualify her for Social Security disability since that meant totally and permanently disabled as to all gainful employment (Tr. 270-271). She stated she would be looking for employment that was less stressful to her musculoskeletal system (Tr. 270-271). Dr. Whitlock recommended she apply for short-term disability (Tr. 270-271). Notes from the office visit of September 12, 2011, reflect that Plaintiff continued to complain of pain (Tr. 273). She was on short-term medical leave from the university because of her inability to perform chores in housekeeping (Tr. 273). She continued to smoke, but stated she had cut down to one-half pack a day (Tr. 273). Plaintiff stated she would like to be on something to ease the pain, but she was not interested in seeing a pain clinic or an orthopedist for further injections (Tr. 273). Her weight was up six pounds since she took medical leave (Tr. 273). Dr. Whitlock opined Plaintiff was still unable to return to duties required at the university, so he extended the disability three months (Tr. 278). He again recommended smoking cessation (Tr. 278). When seen on December 13, 2011, Plaintiff stated she was essentially told that she had to work the program as described without further compromise (Tr. 279). Dr. Whitlock stated he was told by her human resource contact that she would have to apply for disability and he signed it as unacceptable (Tr. 279). Plaintiff complained of weakness (Tr. 279). Dr. Whitlock discussed regular exercise, smoking cessation, losing weight, and monitoring blood sugar (Tr. 282-283). He emphasized the need for treatment for osteoporosis (Tr. 283). Dr. Whitlock extended her leave of absence, given her chronic pain, fibromyalgia, and osteoarthritis (Tr. 283). In January 2012, Plaintiff reported ringing in her ears, dizziness, and sore throat, for which Dr. Whitlock prescribed a Z-PAK (Tr. 284-287). He opined that fibromyalgia and pain precluded her from returning to work at that time (Tr. 287). Plaintiff continued to complain of joint pain in March 2012 (Tr. 288). She reported that she was seen by Dr. Winfield, who felt she indeed did have fibromyalgia as well as osteoporosis (Tr. 288).

John Winfield, M.D., of Appalachian Regional Rheumatology, evaluated Plaintiff for fibromyalgia on March 14, 2012 (Tr. 300). Her medical history revealed Dr. Whitlock had diagnosed fibromyalgia two years previously in the setting of stress (Tr. 300). Plaintiff reported some impairment of activities of daily living (Tr. 300). During the previous week, she rated her pain and fatigue as 7/10 on the visual analog scale (Tr. 300). She had some difficulty getting a good night's sleep and awakened

unrefreshed. She also had problems with depression and anxiety. X-rays of the thoracic spine showed degenerative changes with no acute findings (Tr. 267, 300). Dr. Winfield's impressions were fibromyalgia and osteoporosis of the lumbar spine (Tr. 302). He urged Plaintiff to get into a graded aerobic exercise program (Tr. 302). He increased her Gabapentin to an optimum dose, continued Tramadol, and added Savella to her regimen (Tr. 303). He scheduled a Reclast injection for osteoporosis (Tr. 303).

In a consultative psychological evaluation performed on September 27, 2011, Charlton S. Stanley, Ph.D., and Donna Abbott, M.A., a senior psychological examiner, diagnosed an adjustment disorder with depressed mood, moderate (Tr. 230). They stated Plaintiff could understand and remember on a level commensurate with her intellectual functioning (Tr. 230). They opined that she might have moderate difficulty with complex instructions, stated her adjustment was adequate, opined that she should be able to make decisions on simple and complex work situations, stated she could attend and concentrate, and should be able to maintain basic routine from a mental standpoint (Tr. 230). Dr. Stanley and Ms. Abbott further stated that Plaintiff's social interaction did not appear to be significantly limited, her general adaptation skills showed mild-to-moderate limitations, and it was their opinion that she could be aware of simple hazards and take precautions, could drive and travel alone, should be able to set goals and make plans to achieve these goals independently, should be able to work in proximity to others including supervisors, co-workers, and peers, might have mild-to-moderate difficulty dealing with stress and moderate difficulty adapting to change, and her limitations appeared primarily related to an adjustment disorder with depressed mood (Tr. 230).

Marianne E. Filka, M.D., performed a consultative medical examination on October 4, 2011 (Tr. 232). Plaintiff had an obese body build at a height of 65.75 inches and with a weight of 229 pounds (Tr. 235). There was trace ankle edema to the upper third of her lower legs, but no venous stasis pigmentation (Tr. 235). Her joint appearance showed moderate osteoarthritis changes in the fine finger joints (Tr. 235). There was tenderness in all of the joints and soft tissues and trigger point areas in the upper and lower distal and proximal extremities (Tr. 235). Postural changes (climbing up and down off the exam table, going from sitting to lying, lying to sitting, sitting to standing, and bending) were done with evidence of difficulty (Tr. 235). Her spine showed subtle thoracic or lumbar dextroscoliosis (Tr. 236). There was tenderness in the soft tissues and all the spinous processes in the cervical, thoracic, and low back (Tr. 236). She also had sacroiliac tenderness in the low back (Tr. 236). Plaintiff's mood and affect appeared depressed (Tr. 236). Dr. Filka diagnosed osteoarthralgias to multiple joints; fibromyalgia with typical muscle achiness, poor sleep, chronic fatigue, and intermittent foggy thinking; gastroesophageal reflux disease; hypertension; bilateral lower extremity edema; obesity; depression; chronic constant cervical and mid back pain with bilateral upper extremity intermittent radiating pain to the fingers; chronic intermittent lumbar spine radiating both lower extremities (on right to ankle and on left to thigh); and subtle dextroscoliosis in the thoracic and lumbar area (Tr. 236).

4

In a medical assessment, Dr. Filka opined Plaintiff could occasionally lift, push, pull, or carry up to 20-25 pounds and more frequently push, pull, lift, or carry up to 10-15 pounds; recommended Plaintiff avoid repetitive squatting, stooping, kneeling, crouching, or climbing; stated Plaintiff could occasionally climb stairs or ramps, but should avoid climbing ladders or scaffolding altogether; stated Plaintiff should alternate her position sitting, standing, and walking as needed; and stated Plaintiff should avoid heights, moving mechanical equipment, or heavy vibrating equipment (Tr. 236-237).

In a mental residual functional capacity assessment dated October 13, 2011, state agency medical consultant George Davis, Ph.D. opined Plaintiff could understand and remember for simple, detailed, and multi-step detailed tasks, but not at an executive level; could concentrate and persistent for the above tasks adequately; interact appropriately with the public, co-workers, and supervisors; and adapt to change and set limited goals (Tr. 169). Another state agency medical consultant, M. Candice Burger, Ph.D., affirmed Dr. Davis's opinion on November 1, 2011 (Tr. 262).

In a physical residual functional capacity assessment dated October 13, 2011, state agency medical consultant George L. Cross, III, M.D., opined Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, and sit (with normal breaks) for a total of about six hours in an eight-hour workday (Tr. 253). He stated that Plaintiff should never climb ladders/ropes/scaffolds, but could occasionally climb ramps/stairs, kneel, and crawl; and she could frequently balance, stoop, and crouch (Tr. 254). Plaintiff had to avoid even moderate exposure to hazards (machinery, heights, etc.) (Tr. 256). Thomas Thrush, M.D., affirmed Dr. Cross's opinion on November 4, 2011 (Tr. 264).

[Doc. 14, pgs 1-7].

At the administrative hearing, the ALJ took the testimony of Ms. Cathy Sanders, a vocational expert ["VE"]. The ALJ asked Ms. Sanders to assume that the plaintiff "is restricted to light work. Assume that she requires a sit/stand option with alternating intervals of 30 minutes...." While there were other restrictions in the RFC, none of them are germane to the issues raised by plaintiff in this judicial review. When asked if there were jobs which such a person who was of plaintiff's age, education and vocational background could perform, the VE stated that there was a "half range of entry-level office assistant" with 4,500 jobs in Tennessee and 221,000 in the nation, "and a half range" of telephone answering

5

clerks, with 2,500 in Tennessee and 48,000 in the nation. (Tr. 60).

The plaintiff's counsel cross-examined the VE and asked "what proportion of the unskilled, light job base is eliminated by the additional assumptions in the hypothetical number one?" The VE stated that "there would have been a total of 176,000 jobs in Tennessee for her...," and that had been reduced to 7,000. He then asked "if you were to add to the judge's first hypothetical the additional assumption that an individual had to walk around periodically during the day, in addition to the sit/stand option, would that change your answer." The VE stated that such a requirement would mean "there wouldn't be the ability to retain the two jobs that I gave." (Tr. 61).

In the hearing decision, the ALJ found that the plaintiff had severe impairments of osteoarthritis, osteoporosis, fibromyalgia, obesity, and adjustment disorder with depressed mood. (Tr. 16). He thoroughly discussed the treatment records and evaluations set out above, for example noting that her treating physician, Dr. Whitlock, advised her in 2011 that while fibromyalgia and accompanying pain meant she could not perform her past relevant work, that did not qualify for her for Social Security disability because eligibility for those benefits would require that she be totally and permanently disabled from all employment. Similarly, he described the consultative examination of Dr. Filka, noting that Dr. Filka opined that plaintiff would need to alternate between sitting, standing and walking as needed (Tr. 18).

He then determined that the plaintiff had the residual functional capacity ["RFC"] to perform light work, "except with a sit/stand option at 30 minute intervals," with certain other postural and environmental limitations. (Tr. 20- 21).

6

He evaluated the plaintiff's credibility. He found that her daily activities belied her assertions of total disability, and that they were not incompatible with his RFC finding. He once again pointed to treating physician Dr. Whitlock discouraging her from applying for Social Security disability as indicating that he did not believe the pain she experienced would preclude any work activity. Thus, he found that she was not fully credible. (Tr. 22).

The ALJ then evaluated the opinion evidence. He gave great weight to Dr. Filka and Dr. Stanley. He also gave great weight to the State Agency psychological consultants, whose opinions he found consistent with Dr. Stanley. He only gave "some weight" to the State Agency medical consultants regarding plaintiff's physical impairments. He found their opinions that plaintiff could perform a reduced range of medium work were not well-supported. He stated that he gave great weight to Dr. Filka's opinion because she had examined the plaintiff and the State Agency physicians had not. (Tr. 23).

Based upon the testimony of the VE, he found that a significant number of jobs existed in the national economy. Accordingly, he found that plaintiff was not disabled. (Tr. 24-25).

Plaintiff asserts that there is a lack of substantial evidence to support the finding that the plaintiff could perform other work, and that the ALJ did not follow the regulations. Plaintiff also asserts that the ALJ erred in finding that the plaintiff was not completely credible in describing the limiting effects caused by her impairments.

The plaintiff's argument regarding a lack of substantial evidence is centered on the fact that the ALJ did not include in his RFC finding and question to the VE the opinion of Dr. Filka that plaintiff must be allowed to sit, stand or *walk* at will for comfort, as opposed

7

to the ALJ's finding that she should be allowed to change positions from sitting to standing at thirty minute intervals. As plaintiff points out, if walking around "periodically during the day" was added as a necessary option for plaintiff to be allowed to exercise, that would preclude performance of the jobs the VE identified which she could otherwise perform.

It is undeniably true that Dr. Filka opined that the plaintiff should have the option of walking, and not just every thirty minutes but "as needed for comfort." (Tr. 237). It is likewise undeniably true that the ALJ gave Dr. Filka great weight, greater weight than he gave the State Agency physicians because she examined the plaintiff. However, the ALJ did give them "some weight." Although they found the plaintiff capable of medium lifting, which the ALJ obviously rejected, they did not place any restriction on the plaintiff's ability to sit or to stand/walk. The plaintiff herself testified that every thirty minutes she would need to sit, if she had been standing, or stand and walk around if she had been sitting. (Tr. 53). This would contradict the unrestricted sit/stand/walk option required by Dr. Filka.

Against this factual background, the Court is of the opinion that the State Agency physicians, who placed no change of posture requirement on the plaintiff, and the plaintiff's testimony that she could go for 30 minutes without alternating between sitting or standing and walking, provided substantial evidence upon which the ALJ could find that she must be allowed to alternate positions between sitting and standing every thirty minutes. Put another way, he disbelieved the plaintiff's testimony that she must not only stand, but also walk around every thirty minutes, and the State Agency physician's opinions that she had no need to change positions between sitting or standing. Given this proof, it is not unreasonable for a finder of fact to determine the RFC which the ALJ found. This goes to the essence of the

substantial evidence standard in judicial review of these administrative decisions, and it does not matter what this court would have done if it was the finder of fact. The ALJ found what he found and there was evidence to support it.

The plaintiff also asserts that the ALJ did not follow the requirements of Social Security Ruling ["SSR"] 83-12, (1983 WL 31253). This Ruling gives advice to adjudicators on the role of medical-vocational guidelines (the "Grid") when a person's RFC falls between two rules which direct opposite conclusions.

At the heart of this ruling is a simple condition which is basically if there is doubt as to into which niche a claimant fits, the adjudicator should utilize a VE rather than rely upon a particular rule. The ruling states that a VE "can assess the effect of any limitation on the range of work at issue; advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations with the range of work at issue; *identify jobs which are within the RFC,* if they exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country." That appears to be exactly what the ALJ utilized the VE for, and a significant number of jobs were identified. The case of *Boone v. Barnhart*, 353 F.3d 203 (3rd Cir. 2003), upon which the plaintiff relies, primarily found that the VE's testimony was not substantial evidence because it was unclear which of the identified jobs required *medium* exertion, when the ALJ found her limited to light exertion. *Id.* At 207. In the present case, the tension is between light exertion and sedentary exertion. At her age, if the plaintiff was limited to unskilled sedentary work, she would be disabled under the Grid.

Contrary to plaintiff's assertion, the VE's answer clearly identifies jobs which the VE,

9

based upon her experience, believed were jobs meeting the hypothetical of light exertion. Plaintiff made no attempt to ask Ms. Sanders if the jobs identified were not in fact sedentary as opposed to light jobs. Ms. Sanders was specifically instructed by the ALJ to advise if her opinion of the classification of a job "conflicts with the information in the DOT." [The *Dictionary of Occupational Titles*]. She did not so advise and was not challenged at the hearing by the plaintiff. Therefore, the Court concludes that this regulation was not violated and that Ms. Sanders' testimony constitutes substantial evidence of a significant number of jobs which she could perform.

Finally, plaintiff asserts that because she has fibromyalgia, which is usually bereft of objectively observable signs, the ALJ erred in finding her less than credible. The ALJ thoroughly discussed the evidence, including the records of Dr. Whitlock who treated her for her fibromyalgia, and which strongly suggested that he did not believe her condition would preclude any employment. He also considered the plaintiff's daily activities. The Court sees no basis to question his credibility finding.

There is substantial evidence to support the ALJ's RFC finding and his finding that there are a significant number of jobs the plaintiff can perform. Likewise, the Court is of the opinion that he observed the correct legal standards. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 11] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 13] be GRANTED.[1]

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

Respectfully submitted,

      s/ Dennis H. Inman
United States Magistrate Judge

11